THE DOROTHY.

THE WYOMISSING.

(Circuit Court of Appeals, Second Circuit. May 8, 1911.)

Nos. 246, 247.

COLLISION (§ 71*)—GROUNDED STEAMSHIP—NEGLIGENT OPERATION OF PRO-
PELLER.

A steamer, grounded in Newtown creek, Long Island, and obstructing
navigation by other vessels, started her propeller in an endeavor to free
herself at high tide, and kept it in operation for 15 minutes, and until
the suction drew libelant's scow, which was a part of a tow and lying
at some little distance, so close that she was struck and sunk by the pro-
peller. The master and lookout of the steamship were in such positions
that they could see the scow and observe her movements. *Held*, that the
steamship was in fault for not sooner stopping her propeller, as it was
her duty to do; that the tug, having the scow and 15 other barges in
tow, and which was engaged in distributing the same, was not in fault,
as the scow was safe until the steamer started her propeller, and the
tug had the right to assume that she would not recklessly subject the
nearby vessels to such danger.

[Ed. Note.—For other cases, see Collision, Dec. Dig. § 71.*]

Appeals from the District Court of the United States for the South-
ern District of New York.

Suit in admiralty for collision by Michael Tracy and John Tracy,
as owners of the scow William Carney, against the steamer Dorothy,
the A. H. Bull Steamship Company, claimant, and the steam tug
Wyomissing, the Philadelphia & Reading Railway, claimant. De-
cree against both vessels, and claimants appeal. Reversed, with di-
rections to decree against the Dorothy alone.

Libel by the owner of the Dorothy against the Wyomissing, and
decree against the latter for part damages, from which the claimant
of the Wyomissing appeals. Reversed.

The first of the above-entitled actions was brought by Michael and John
Tracy, owners of the scow William Carney, against the steamer Dorothy and
the steam tug Wyomissing, to recover damages sustained by the said scow
on October 5, 1909, while lying in Newtown creek. It is alleged that through
the negligence of the steamer and tug the Carney was permitted to drift upon
the revolving propeller of the steamer, which cut a large hole in her side,
causing her to sink, with her cargo of coal. The District Court entered a
decree, based upon an opinion filed March 12, 1910, in favor of the scow and
against the steamer and tug for $1,701.75.

On March 21, 1910, after the above decision had been filed, the Bull Steam-
ship Company, owner of the Dorothy, filed a libel against the Wyomissing to
recover damages for the injury to her propeller by reason of its contact with
the Carney. The Dorothy insisted that the collision occurred through the
fault of the tug in not keeping the Carney out of danger. The District Court
entered a decree November 8, 1910, against the Wyomissing for $422.08, be-
ing one-third of the damages suffered by the Dorothy.

The Wyomissing has appealed from the first decree, and both she and the
Dorothy have appealed from the second decree.

MacFarland, Taylor & Costello (Willard U. Taylor, of counsel), for the Dorothy.

Armstrong & Brown (Pierre M. Brown, of counsel), for the Wyomissing.

Before LACOMBE, COXE and WARD, Circuit Judges.

COXE, Circuit Judge. On October 5, 1909, the steamship Dorothy was lying aground in Newtown creek and was endeavoring, at high tide, by means of her propeller and a hawser to the shore, to get herself free. The Dorothy is a large steamship about 315 feet in length. She was headed upstream and was lying with her bow between 300 and 400 feet from the dock on the Brooklyn, or southerly, side of the creek, her stern reaching almost to the East River.

The Wyomissing, with a tow of 16 loaded barges, reached the mouth of the creek intending to tie up at Bergen's Dock and there distribute her East River boats. The tow was made up in four tiers, the injured boat—the Carney—tailing behind the fourth tier. Accompanying the tow, as helper, was the tug Pencoyd. When the head tier of the tow had reached the bulkhead, the Carney, at the end of the tow, had been swung by the flood tide in the river diagonally across the creek and towards the starboard side of the Dorothy. Up to this time we understand the proof to be that the Dorothy's propeller had not been in motion. At 11 o'clock the Dorothy started her propeller at a time when the Carney had been carried by the tide to about amidships of the Dorothy. She was then about 100 feet from the Dorothy's starboard side and was in no danger from the propeller. Fifteen minutes after it started to revolve the Carney was, by means of the suction thus produced in the comparatively shallow waters of the creek, drawn against the revolving blades and received injuries from which she sank shortly thereafter.

The steamer was found at fault because of the negligence of a lookout at her stern in failing to give warning of the drifting of the Carney towards the propeller. The tug was inculpated because she failed to give the Dorothy warning of the proximity of the Carney at the time her engines were started; also in failing to give assistance to the Carney. We concur in the finding against the Dorothy, but are unable to find negligence on the part of the Wyomissing.

The Dorothy was aground in a part of the harbor where vessels alone and with tows were constantly going in pursuit of their ordinary vocations. She was 315 feet in length and with the line out to the Brooklyn shore, which she refused to remove, she was seriously obstructing navigation. It cannot be pretended that the Wyomissing and the other tugs having business in the creek were called upon to suspend operations and lie out in the East River until the Dorothy was floated. The tug was entirely justified in proceeding to the lumber dock for the purpose of sorting out and distributing the barges in her custody. That she did this prudently and with a due regard for all the dangers which were reasonably to be apprehended, we are convinced. She was not called upon to assume that the Dorothy would start her propeller when the barges were in dangerous proximity and

keep it in motion until one of them was struck and sunk. The master of the tug was attending to his business and at the time of the collision had a barge alongside and could not have reached the Carney in time to have prevented the accident. The situation was, or should have been, as apparent to the steamer as to the tug and the latter was justified in assuming that the former would not recklessly subject the barges to danger.

The witnesses called for the Dorothy were an oiler, who was stationed at the stern "to watch the propeller and see that nothing came up to her," and two engineers, who were in the engine room and saw nothing of what was transpiring. The captain, who, according to the oiler, was on the bridge, was not called. The negligence of the Dorothy is so plain and so clearly accounts for the accident that it is not necessary to speculate as to other causes.

For 15 minutes, at least, her propeller was revolving and the suction produced was gradually drawing the Carney nearer and nearer to the danger. All this was apparent to the oiler, who was on watch and also to the man on the bridge, and yet nothing was done to prevent the disaster. If this situation were insufficient to induce those in charge of the Dorothy to stop her engines, it is not easy to perceive what means could have been employed to produce that result. The testimony shows that there was general commotion among the barges, signals were given and warnings were shouted to the steamer. Even though it be conceded that these were given when the Carney was in extremis, it does not detract from the proposition that the steamer knew of the danger and that signals, even if given sooner, would have added nothing to that knowledge. If she had stopped her propeller for a few minutes, until the barges had been safely moored or towed away, there would have been no collision. That it was her duty to stop her propeller we have no doubt. The duty was so obvious that the Wyomissing was justified in believing that it would be performed and she cannot be held at fault for assuming that the Dorothy would act as common sense and ordinary prudence dictated.

It follows that the decrees should be reversed and the causes remanded to the District Court with instructions to enter a decree in the first of the above entitled actions against the Dorothy with costs and to dismiss the libel in the second of the above entitled actions with costs to the Wyomissing.

The Wyomissing should recover her costs in this court.