### THE PAUL DANA.

### THE TAURUS et al.
### No. A. 17916.

United States District Court
E. D. New York.
Dec. 13, 1948.

Foley & Martin, New York City (Edward J. Ryan, Rochester, and Christopher E. Heckman, New York City, of counsel), for libelant.

Alexander & Ash, New York City (Sidney A. Schwartz and Edward Ash, New York City, of counsel), for Gowanus Towing Co.

Tompkins, Boal & Tompkins, New York City (Arthur M. Boal, New York City, of counsel), for the Texas Co.

INCH, Chief Judge.

This is an action brought to recover damages to the tanker "Paul Dana", owned by libellant. The damages were caused by a collision in the Gowanus Creek, between a barge in tow of the tug "Taurus" and the said tanker. Thereupon the said libellant sued the tug "Taurus" and her claimant, and the latter impleaded The Texas Company, owner of a large steamer in the vicinity of the collision. The exact amount of damage will be determined later, but that there was such a collision I am satisfied is sufficiently shown by testimony which I believe to, be true.

However, the real issue to be determined is that existing between the tug and the owner of the steamship in question. Most of the facts in this controversy are undisputed. The collision occurred on March 11, 1946, shortly after noon. The weather was normal, and all those concerned could see each other. The tanker was tied up to the easterly side of Bush's Pier No. 7, Gowanus Creek, and was a dead ship. This creek is a narrow body of water about two hundred fifty feet wide, and is a place of activity, with barges, tugs, etc. It has figured in other cases as a place of collision. Ira S. Bushey & Sons, Inc., v. United States, D. C., 78 F.Supp. 673, Galston, J.

Just prior to the collision, the tug "Taurus" came along with very little room to pass. She was towing two barges tandem. No fault can be found with the way this tow was made up, and it is my considered opinion that the navigation of this tug and tow was proper and safe as the tug and tow approached the tanker, which was lying moored about twenty feet in from the end of the pier. Nevertheless, when the tug and her first barge (Mack) about had passed the tanker, her tail barge (Tracy) collided with the tanker near the latter's stern, doing certain alleged damage to the

tanker's propeller. The libellant, therefore, is entitled to recover the damages sustained against either the tug "Taurus" or The Texas Company, owner of the steamer "Contraras", which was laying across the stream, about fifty or sixty feet in from the end of the pier, inside the slip, stern out.

When the captain of the tug approached this ship with his tow, he noticed that the steamer's propeller was working, causing considerable quick water. The tug thereupon blew a danger signal. There was a man on the stern of the steamer, and the tug and her tow thereupon tied up, and patiently waited for the steamer to stop working her wheel. This steamer was apparently being repaired or overhauled, and a part of this work was trying out her propeller. After a reasonable time in waiting, and seeing that the propeller had stopped working, and the quick water had subsided, Fitzsimmons, the captain of the "Taurus", saw the man on the stern give him a signal indicating that it would be then safe to proceed. He did so, and his tug and the first coal boat had got past the "Dana" when the wheel of the steamer started up again. The quick water caused by this careless act caught the stern coal boat sufficiently to push it out of line somewhat in spite of all that Fitzsimmons could do to hold his tow straight, and I find it a fact that the collision between this barge and the tanker thereby occurred.

Thus the real issue already referred to above, is what caused the collision. Was it solely the negligence of the tug captain, or was it negligence on the part of both the tug and the steamer, or was it the sole approximate cause the careless sudden starting up of the steamer's wheel?

Apparently the owner of the steamship could have produced another witness or witnesses rather than rely solely on the deposition of the master of the ship, who apparently knew nothing about this accident, for, according to uncontradicted testimony of the captain of the tug, there was some one on the stern of the ship for the specific purpose of controlling the working of the ship's wheel if the occasion arose, as it did. Nevertheless, I am satisfied that Mills, the mate aboard the tanker at the time, tes-

tified truthfully when he said there was a collision, and that he felt the same as he stood there on the tanker, and that Fitzsimmons, the captain of the tug, testified truthfully when he said that he had hung up the tug and tow for a considerable time until the wheels of the steamer had stopped and the quick water subsided, and had then received a signal from the ship to go ahead.

Accordingly, in view of the undisputed circumstances surrounding this collision, I do not find any fault on the part of the tug "Taurus" and her captain. On the contrary, I think that the sole cause of this unfortunate occurrence was the negligence of those operating and in control of the steamship. The Dorothy, 2 Cir., 189 F. 40.

Decree is given for libellant against The Texas Company, with costs, the libel against the tug "Taurus" and her owner, is dismissed.

Submit findings of fact and conclusions.